## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| VITA-MIX CORPORATION, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| TROJAN HORSE INC. (dba CRUZ), | |
| Defendant. | |

## COMPLAINT

Plaintiff Vita-Mix Corporation ("Vitamix"), by and through its undersigned counsel, files this Complaint against Defendant Trojan Horse Inc. (dba Cruz) ("Trojan").

### INTRODUCTION

1. This action arises out of Trojan's breaches of its contractual obligations to Vitamix to ship safe, compliant, UL Certified, FAIR approved Goods (defined *infra*) to Vitamix pursuant to Sections 9.1, 7, and 14 of, and § 14.2 of Exhibit C to, an October 2, 2024 Private Label Supply Agreement (the "Agreement") by and between Vitamix and Trojan.  A true and correct copy of the Agreement is attached to this Complaint as **Exhibit A**.

2. By letter dated August 5, 2025, Vitamix notified Trojan of its breaches of the Agreement and demanded that Trojan remedy its breaches within sixty (60) days in accordance with Section 9.1 of the Agreement.  A true and correct copy of the August 5, 2025 Letter is attached to this Complaint as **Exhibit B**.

3. Trojan failed to remedy any of its breaches of the Agreement, let alone within the sixty (60) days provided for in Section 9.1 of the Agreement.

4. Accordingly, Trojan breached the Agreement and failed to cure its breach, and by letter dated November 7, 2025, Vitamix terminated the Agreement. A true and correct copy of the November 7, 2025 Letter is attached to this Complaint as **Exhibit C**.

5. Vitamix now files this Complaint to compel Trojan to fulfill its obligations under Sections 18.3, 18.4(a)-(d), and 7.4 of the Agreement, including to (1) return to Vitamix the $619,160.00 paid to Trojan for undelivered Goods; (2) return all of Vitamix's documents and materials; (3) permanently erase all of Vitamix's Confidential Information (defined *infra*); (4) return Vitamix's tangible property in Trojan's possession or control; (5) certify compliance with the termination provisions of the Agreement; and (6) return any and all products, tooling, or other things that incorporate Vitamix's trademarks or Intellectual Property.

## THE PARTIES

6. Vitamix is a Delaware corporation with its principal place of business at 8615 Usher Road, Olmsted Township, Ohio 44138.

7. Trojan is a California corporation with its principal place of business at 1500 Green Hills Road, Suite 104, Scotts Valley, California 95066.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Trojan because Trojan contracted to do business with Vitamix in the Agreement, Vitamix's claims against Trojan arise out of the Agreement, and Trojan agreed to submit to the jurisdiction of this Court in the Agreement. (Agreement, § 31).

9. This Court has subject matter jurisdiction over Vitamix's claims against Trojan pursuant to 28 U.S.C. § 1332 because (1) complete diversity of citizenship exists between Vitamix,

on the one hand, and Trojan, on the other hand, and (2) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10. Vitamix is a citizen of Delaware and Ohio for purposes of determining its citizenship pursuant to 28 U.S.C. § 1332(c)(1) because Vitamix is a Delaware corporation with its principal place of business in Ohio.

11. Trojan is a citizen of California for purposes of determining its citizenship pursuant to 28 U.S.C. § 1332(c)(1) because Trojan is a California corporation with its principal place of business in California.

12. The amount in controversy, i.e., the money damages Vitamix has wrongfully incurred as a result of Trojan's breaches of the Agreement, is in excess of $75,000, exclusive of interest and costs.

13. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Vitamix's claims against Trojan occurred in the Northern District of Ohio and Vitamix and Trojan agreed, in the Agreement, that this Court would be the exclusive venue for "any action, litigation, or proceeding of any kind whatsoever against the other Party in any way arising from, based on, or relating to this Agreement, including all exhibits, schedules, attachments, and appendices attached to this Agreement, and all contemplated transactions." (Agreement, § 31).

**FACTUAL BACKGROUND**

14. Vitamix is the market leader in blender technology and is recognized as the premier blender brand based upon its unwavering commitment to design, develop, and produce the world's best performing and most reliable blending solutions.

15. Trojan represented itself to be "in the business of manufacturing and selling a battery powered portable blending device used in wide-mouth bottles and vacuum sealed containers." (Agreement, Section A).

16. On October 2, 2024, Vitamix and Trojan entered into the Agreement.

17. In general, pursuant to the Agreement, Vitamix agreed to purchase its requirements of certain Goods from Trojan, to be sold by Vitamix under Vitamix's private label, and Trojan agreed to manufacture and sell the goods to Vitamix in accordance with the terms and subject to the conditions set forth in the Agreement. (Agreement, Recitals).

18. Section 1 of the Agreement provides as follows:

1. <u>Supply of Goods</u>. Subject to the terms and conditions of this Agreement, [Trojan] shall produce and sell to [Vitamix], and [Vitamix] shall purchase from [Trojan], goods meeting the specifications set forth in Exhibit C (the "**Goods**") in the quantities, at the Prices (as defined in Section 10), and upon the terms and conditions set forth in this Agreement. [Vitamix] will then have the right to resell the Goods at the prices and on the terms that it desires.

(Agreement, § 1).

19. Section 2 of the Agreement provides as follows:

2. <u>Ordering</u>. [Vitamix] shall place orders for the Goods, from time-to-time to replenish inventory, by issuing purchase orders in the form set forth in Exhibit B. [Trojan] shall deliver the Goods in the quantities and on the date(s) specified in Exhibit A or as otherwise agreed in writing by the parties (the "**Delivery Date**"). Timely delivery of the Goods is of the essence. If [Trojan] fails to deliver the Goods in full on the Delivery Date, [Vitamix] may terminate this Agreement immediately by providing written notice to [Trojan] and [Trojan] shall indemnify and hold [Vitamix] harmless against any losses, claims, damages, and reasonable costs and expenses directly attributable to [Trojan]'s failure to deliver the Goods on the Delivery Date. [Vitamix] agrees to place orders of at least fifty thousand (50,000) units of Goods (to include the Initial Purchase described in Section 11) during the Term of this Agreement (the "**Minimum Order**"). [Vitamix] may satisfy the Minimum Order through multiple purchase orders of any quantity over the Term, subject to the requirements set out in this Agreement. [Vitamix]'s rescission of the Agreement pursuant to Section 9 or termination pursuant to Section 18 shall fully relieve [Vitamix] of this obligation.

(Agreement, § 2).

20. Section 4 of the Agreement provides as follows:

> 4. Delivery Location. All Goods shall be delivered to the address specified in Exhibit A (the "**Delivery Location**") during [Vitamix]'s normal business hours or as otherwise instructed by [Vitamix].

(Agreement, § 4).

21. Section 5 of the Agreement provides as follows:

> 5. Shipping Terms. DDP (Delivered Duty Paid) Vita-Mix Corporation, 23221 Morgan Ct, Strongsville, OH 44149, as per Incoterms 2020.

(Agreement, § 5).

22. Section 7 of the Agreement provides, among other things, as follows:

> 7. Manufacturing Capacity, Brand Labeling, Limited License, and Packaging.
>
> 7.1 [Trojan] represents and warrants to [Vitamix] that [Trojan] has and will maintain during the term of this Agreement, adequate capacity to fulfill [Vitamix]'s forecasted demand for the Goods.
>
> . . .
>
> 7.7 [Trojan] shall properly pack, mark, and ship the finished Goods solely as instructed by [Vitamix] and otherwise in accordance with applicable law and industry standards and shall provide [Vitamix] with shipment documentation showing the quantity of pieces in shipment, the number of cartons or containers in shipment, [Trojan]'s name, the air waybill/bill of lading number, and the country of origin.

(Agreement, §§ 7.1, 7.7).

23. Section 9.1 of the Agreement provides as follows:

> 9. Inspection and Rejection of Nonconforming Goods/Product Recalls.
>
> 9.1 [Vitamix] has the right to inspect the Goods on or after the Delivery Date. [Vitamix], at its sole option, may inspect all or a sample of the Goods, and may reject all or any portion of the Goods if it determines the Goods are non-conforming or defective. If [Vitamix] rejects any portion

of the Goods, [Vitamix] has the right, effective upon written notice to [Trojan], to (a) provide notice to [Trojan] of the non-conforming or defective Goods, and rescind this Agreement in its entirety if [Trojan] fails to cure the non-conformance or defect within sixty (60) days following delivery of such notice, or (b) reject the Goods and require replacement of the rejected Goods. An exercise of [Vitamix]'s rights under 9.1(a) does not impact the Initial Purchase defined in Section 11 hereto. If [Vitamix] requires replacement of the Goods, [Trojan] shall, at its expense, promptly and in any event within forty-five (45) days replace the nonconforming Goods and pay for all related expenses, including, but not limited to, transportation charges for the return of the defective goods, the delivery of replacement Goods, and any fines levied against [Vitamix].

24.     Section 12 of the Agreement provides as follows:

12.     Additional Covenants of the Parties. [Trojan] will not sell, distribute, manufacture, import, or otherwise exploit the Goods (or permit others to "private label" the Goods) or any other products in the same field of use as the Goods to any third party without [Vitamix]'s written consent. The Field of Use shall be the field of portable, battery-operated blending equipment. It being understood that [Vitamix] will be the exclusive distributor of all products sold, manufactured, imported, or otherwise exploited by [Trojan] in the Field of Use, including but not limited to the Goods. [Trojan] will diligently enforce and protect patent and all intellectual property used in the Goods ("[Trojan] IP") and will take all such actions against any third party who it infringing on the [Trojan]'s IP to preserve and protect its intellectual property rights. Additionally, and though nothing in this section is intended to confer a legal obligation to do so, the parties desire that in the event [Trojan] develops new blending and mixing product concepts and/or opportunities, it will offer such to [Vitamix] as part of the Parties' ongoing business relationship.

(Agreement, § 12).

25.     Section 14 of the Agreement provides as follows:

14.     Compliance with Law. [Trojan] is in compliance with and shall comply with all applicable laws, regulations, and ordinances. [Trojan] has and shall maintain in effect all the licenses, permissions, authorizations, consents, and permits that it needs to carry out its obligations under this Agreement. The Goods have all certifications that are required for it to be obtained to manufacture and sell the Goods.

(Agreement, § 14).

26.     Section 18 of the Agreement provides, among other things, as follows:

18.     Term and Termination.

18.1     This Agreement commences as of the Effective Date and continues thereafter until terminated by either Party in accordance with the terms herein.

18.2     In addition to any other remedies that may be provided under this Agreement, the non-defaulting Party may terminate this Agreement with immediate effect upon written notice to the other Party, if:

(a)     the other Party has not performed or complied with any of the material terms and conditions of this Agreement, in whole or in part and either the breach cannot be cured or, if the breach can be cured, it is not cured by the other Party within thirty (30) days after the breaching Party's receipt of written notice of such breach . . .

18.3     If [Vitamix] terminates this Agreement for any reason, [Trojan]'s sole and exclusive remedy is payment for the Goods received and accepted by [Vitamix] prior to the termination. If a deposit or advance payment has been made by [Vitamix] for any goods that have not and will not be delivered to [Vitamix] following expiration or termination, [Trojan] shall promptly reimburse such payment to Customer.

18.4     [Trojan] shall promptly, following the expiration or termination of this Agreement:

(a)     return to [Vitamix] all documents and tangible materials (and any copies) containing, reflecting, incorporating, or based on [Vitamix]'s Confidential Information (as defined in Section 19);

(b)     permanently erase all of [Vitamix]'s Confidential Information from its computer systems, except for copies that are maintained as archive copies on its disaster recovery and information technology backup systems in which case such copies shall be destroyed upon the normal expiration of the backup files;

(c)     return to [Vitamix] all tangible property, including labels, in its possession or control, belonging to [Vitamix]; and

(d) certify in writing to [Vitamix] that it has complied with the requirements of this Section 18.4.

(Agreement, §§ 18.1, 18.2, 18.3, 18.4).

27. Section 19 of the Agreement provides as follows:

19. <u>Confidential Information</u>. All non-public, confidential, or proprietary information of each Party, including, but not limited to, specifications, samples, patterns, designs, plans, drawings, documents, data, business operations, customer lists, pricing, discounts, or rebates, disclosed by either Party to the other, whether disclosed orally or disclosed or accessed in written, electronic or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," in connection with this Agreement is confidential, solely for the use of performing this Agreement and may not be disclosed or copied unless authorized by the disclosing Party in writing. Upon the disclosing Party's request, the recipient of information shall promptly return all documents and other materials received from the other party. The recipient shall be entitled to injunctive relief for any violation of this Section. This Section shall not apply to information that is: (a) in the public domain; (b) known to the recipient at the time of disclosure; or (c) rightfully obtained by the recipient on a non-confidential basis from a third party.

(Agreement, § 19).

28. Section 14.2 of Exhibit C to the Agreement provides as follows:

14.2. Supplier shall comply with requirements per the FAIR (First Article Inspection Report) Requirements Guideline (WI 8.4-145).

(Agreement, Exhibit C, § 14.2).

29. In early 2025, Vitamix issued its first Purchase Order (Number 10172477) for Goods under the Agreement to Trojan.

30. Vitamix ordered 4,000 units of Item Number 75705 (BLENDERCAP PRO BUNDLE/28OZ/18OZ/5V/POP) and 6,000 units of Item Number 75706 (BLENDERCAP BASE BUNDLE/28OZ/5V/POP).

31. The total amount of the Purchase Order was $619,160 (4,000 units of Item Number 75705 at $64.07/unit and 6,000 units of Item Number 75706 at $60.48/unit) and Vitamix transmitted that entire amount to Trojan.

32.     Trojan delivered 210 samples of Item Number 75705 (BLENDERCAP PRO BUNDLE/28OZ/18OZ/5V/POP) and 300 samples of Item Number 75706 (BLENDERCAP BASE BUNDLE/28OZ/5V/POP).

33.     Based upon the samples delivered to Vitamix and e-mail communications between Vitamix and Trojan (*see* attachment to August 5, 2025 Letter), it became clear that the Goods which Trojan had manufactured in response to the Purchase Order were not safe, compliant, UL Certified, or FAIR approved in breach of the Agreement, and in particular, Sections 7 and 14 of the Agreement and Section 14.2 of Exhibit C to the Agreement.

34.     Accordingly, by letter dated August 5, 2025, Vitamix formally notified Trojan of the non-conforming Goods and demanded that Trojan cure the non-conformance within sixty (60) days pursuant to Section 9.1 of the Agreement.

35.     Trojan failed to cure the non-conformance at all, let alone within the sixty (60) days required by Section 9.1 of the Agreement.

36.     Accordingly, by letter dated November 7, 2025, Vitamix notified Trojan that it was terminating the Agreement and demanded that Trojan immediately fulfill all of its obligations upon termination of the Agreement, including by (1) returning to Vitamix the $619,160.00 paid to Trojan for the undelivered Goods; (2) returning all of Vitamix's documents and materials; (3) permanently erasing all of Vitamix's Confidential Information; (4) returning Vitamix's tangible property in Trojan's possession or control; (5) certifying compliance with the termination provisions of the Agreement; and (6) returning any and all products, tooling, or other things that incorporate Vitamix's trademarks or Intellectual Property in accordance with Sections 7.4, 18.3, and 18.4(a), (b), (c), and (d) of the Agreement.

37. Vitamix also reminded Trojan of its confidentiality obligations under Section 19 of the Agreement and its exclusivity obligations under Section 12 of the Agreement. (*See* November 7, 2025 Letter, p. 2).

38. Trojan has denied any and all liability for Vitamix for its breaches of the Agreement and it has failed and refused to comply with its obligations upon termination of the Agreement.

**COUNT ONE**
**BREACH OF CONTRACT**

39. Vitamix incorporates the preceding Paragraphs of this Complaint as if the same were fully set forth herein.

40. The Agreement is valid and enforceable.

41. By Purchase Order Number 10172477, Vitamix ordered 4,000 units of Item Number 75705 (BLENDERCAP PRO BUNDLE/28OZ/18OZ/5V/POP) and 6,000 units of Item Number 75706 (BLENDERCAP BASE BUNDLE/28OZ/5V/POP) and paid Trojan $619,160 for the Goods.

42. Trojan breached the Agreement by failing to manufacture and deliver to Vitamix Goods that were safe, compliant, UL Certified, and FAIR approved in response to Purchase Order Number 10172477.

43. By letter dated August 5, 2025, Vitamix notified Trojan of the non-conforming Goods and demanded that Trojan cure the non-conformance within sixty (60) days.

44. Trojan failed to cure the non-conformance at all, let alone within the sixty (60) days required by Section 9.1 of the Agreement.

45. Accordingly, by letter dated November 7, 2025, Vitamix notified Trojan that it was terminating the Agreement and demanded that Trojan immediately fulfill all of its obligations upon termination of the Agreement, including by (1) returning to Vitamix the $619,160.00 paid to

Trojan for the undelivered Goods; (2) returning all of Vitamix's documents and materials; (3) permanently erasing all of Vitamix's Confidential Information; (4) returning Vitamix's tangible property in Trojan's possession or control; (5) certifying compliance with the termination provisions of the Agreement; and (6) returning any and all products, tooling, or other things that incorporate Vitamix's trademarks or Intellectual Property in accordance with Sections 7.4, 18.3, and 18.4(a), (b), (c), and (d) of the Agreement.

46. Vitamix has fully performed its obligations and duties under the Agreement.

47. Trojan has failed and refused to comply with its obligations upon termination of the Agreement.

48. As a direct and proximate result of Trojan's breaches of the Agreement, Vitamix has suffered money damages in the amount of $619,160.

**COUNT TWO**
**UNJUST ENRICHMENT**
**(in the alternative)**

49. Vitamix incorporates the preceding Paragraphs of this Complaint as if the same were fully set forth herein.

50. Vitamix conferred a benefit on Trojan by paying $619,160 for Goods that were to be safe, compliant, UL Certified, and FAIR approved.

51. Trojan accepted and retained the benefit of the $619,160 Vitamix paid to it.

52. Trojan failed to manufacture and deliver to Vitamix Goods that were safe, compliant, UL Certified, and FAIR approved.

53. It would be unjust and inequitable to allow Trojan to retain the benefit of the $619,160 Vitamix paid to it without requiring Trojan to deliver to Vitamix Goods that were safe, compliant, UL Certified, and FAIR approved.

## COUNT THREE
### DECLARATORY JUDGMENT

54.    Vitamix incorporates the preceding Paragraphs of this Complaint as if the same were fully set forth herein.

55.    The Agreement is valid and enforceable.

56.    By Purchase Order Number 10172477, Vitamix ordered 4,000 units of Item Number 75705 (BLENDERCAP PRO BUNDLE/28OZ/18OZ/5V/POP) and 6,000 units of Item Number 75706 (BLENDERCAP BASE BUNDLE/28OZ/5V/POP) and paid Trojan $619,160 for the Goods.

57.    Trojan breached the Agreement by failing to manufacture and deliver to Vitamix Goods that were safe, compliant, UL Certified, and FAIR approved in response to Purchase Order Number 10172477.

58.    By letter dated August 5, 2025, Vitamix notified Trojan of the non-conforming Goods and demanded that Trojan cure the non-conformance within sixty (60) days.

59.    Trojan failed to cure the non-conformance at all, let alone within the sixty (60) days required by Section 9.1 of the Agreement.

60.    Accordingly, by letter dated November 7, 2025, Vitamix notified Trojan that it was terminating the Agreement and demanded that Trojan immediately fulfill all of its obligations upon termination of the Agreement, including by (1) returning to Vitamix the $619,160.00 paid to Trojan for the undelivered Goods; (2) returning all of Vitamix's documents and materials; (3) permanently erasing all of Vitamix's Confidential Information; (4) returning Vitamix's tangible property in Trojan's possession or control; (5) certifying compliance with the termination provisions of the Agreement; and (6) returning any and all products, tooling, or other things that

incorporate Vitamix's trademarks or Intellectual Property in accordance with Sections 7.4, 18.3, and 18.4(a), (b), (c), and (d) of the Agreement.

61.     Accordingly, Vitamix is entitled to the entry of declaratory judgment that the Agreement is terminated and that Trojan is required to perform all of its obligations upon termination of the Agreement, including by (1) returning to Vitamix the $619,160.00 paid to Trojan for the undelivered Goods; (2) returning all of Vitamix's documents and materials; (3) permanently erasing all of Vitamix's Confidential Information; (4) returning Vitamix's tangible property in Trojan's possession or control; (5) certifying compliance with the termination provisions of the Agreement; and (6) returning any and all products, tooling, or other things that incorporate Vitamix's trademarks or Intellectual Property in accordance with Sections 7.4, 18.3, and 18.4(a), (b), (c), and (d) of the Agreement.

<b>PRAYER FOR RELIEF</b>

Vitamix demands Judgment in its favor and against Trojan, as follows:

1.     compensatory damages in the amount of $619,160 incurred as a result of Trojan's breaches of the Agreement;

2.     pre-judgment and post-judgment interest; and

3.     a declaration that the Agreement is terminated and that Trojan is required to perform all of its obligations upon termination of the Agreement, including by (1) returning to Vitamix the $619,160.00 paid to Trojan for the undelivered Goods; (2) returning all of Vitamix's documents and materials; (3) permanently erasing all of Vitamix's Confidential Information; (4) returning Vitamix's tangible property in Trojan's possession or control; (5) certifying compliance with the termination provisions of the Agreement; and (6) returning any and all products, tooling,

or other things that incorporate Vitamix's trademarks or Intellectual Property in accordance with Sections 7.4, 18.3, and 18.4(a), (b), (c), and (d) of the Agreement.

Respectfully submitted,

Dated: April 23, 2026

/s/ Brendan J. Mohan
Douglas J. Feichtner (75160)
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
(513) 977-8497 (t)
(513) 977-8141 (f)
doug.feichtner@dinsmore.com

Brendan J. Mohan (0104958)
DINSMORE & SHOHL LLP
1001 Lakeside Avenue, Suite 990
Cleveland, Ohio 44114
(216) 478-3687 (t)
(216) 413-3839 (f)
brendan.mohan@dinsmore.com

*Counsel for Plaintiff Vita-Mix Corporation*